## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MATTIE YOUNG,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **Civil Action No.  04-2241** |
| **STEPHEN A. PERRY,** | )          **(ESH)** |
| **ADMINISTRATOR,** | ) |
| **GENERAL SERVICES** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

### MEMORANDUM OPINION

This case is brought under the Age Discrimination in Employment Act, 29 U.S.C. §§621-34 ("ADEA").  Plaintiff alleges that she was subjected to unlawful age discrimination when she was not selected for one of three Information Technology Specialist ("I.T. Specialist") positions at the Federal Supply Service of the General Services Administration ("GSA").  At the time that plaintiff was not selected for the position, she was sixty-two years old.  Defendant has moved for summary judgment, arguing that plaintiff has failed to rebut the GSA's nondiscriminatory reasons for not selecting her.  As explained herein, the Court concludes that defendant's motion should be granted.

### BACKGROUND

Plaintiff Mattie Young, born in 1940, began working in the GSA Administrative Mail Room in 1972 as a program analyst and moved into telecommunications for the GSA in 1980. (Def.'s Stmt. of Facts ¶¶ 1, 2; Def. Ex. 3 [plaintiff's resume] at 2.)   Since then, she has held several different positions at the GSA and the U.S. Department of Justice relating to

telecommunications.  (Def. Ex. 3 at 2.)  In 1989, plaintiff began working at the GSA's Federal

Supply Service ("FSS") as a Telecommunication Manager, the position she held at the time of

the non-selection at issue here.  (*Id.*)  While working at the GSA, she received a Bachelor of

Science degree in Business Administration in 1995 and a Master of Public Administration

degree in Government Management/Public Administration in 1997.  (Def.'s Stmt. of Facts ¶¶ 4,

5.)

      In March 2002, plaintiff unsuccessfully applied for the I.T. Specialist position (GS-2210-

13) at the FSS, posted under GSA Vacancy Announcement No. 020067521. (Def.'s Stmt. of

Facts ¶¶ 7, 15; Def. Ex. 5 at 1-2 [Vacancy Announcement].)  The Vacancy Announcement listed

the following "knowledge, skills, and abilities" ("KSAs") by which "the best qualified

candidates" would be identified:

1. Knowledge and experience in the implementation, support, and
   maintenance of information technology hardware and/or software.
2. Knowledge and experience in systems analysis, methodologies, systems
   design, and development techniques.
3. Planning and Organizing -- Ability to establish an appropriate course of
   action for self and others to accomplish specific goals and objectives, to
   set priorities, to make proper assignments of personnel, and to appropriate
   [sic] utilize resources.
4. Ability to effectively communicate, both orally and in writing.

(Def. Ex. 5 at 2.)

      Thirteen candidates applied for the I.T. Specialist positions, and of these, eight, including

plaintiff, were rated "qualified" in the initial screening.  (Def. Ex. 5 at 10 [Initial Screening

Worksheet].)  Six of the qualified candidates, including plaintiff, were then placed on the "Merit

Promotion Referral" list.  (*Id*. at 11.)  In selecting from among these six candidates, the

recommending official, Jonathan T. Folz, Director of the FSS Information Infrastructure

Division, consulted the candidates' Team Leaders -- Joshua Jackson and Deborah Chapper. (Def.'s Stmt. of Facts ¶ 10.)  Chapper was the Team Leader for applicants Patrick Haas and Antonio Notarangelo.  She recommended Notarangelo (born in 1957) for the position.  (*Id.* ¶ 12.) Jackson was the Team Leader for plaintiff, Sherry Shackelford (born in 1964), Claudius Smith (born in 1965), and Christopher Simmons (born in 1971).  He recommended Shackelford and Smith; he did not recommend plaintiff or Simmons.  (*Id.* ¶ 13.)  Jackson testified that his recommendations for the I.T. Specialist positions were based on:  (1) experience in information technology; (2) history of performance in information technology; (3) capability to perform in an information technology environment at a high level; (4) demonstrated ability to "accomplish high-level tasks in a timely manner;" (5) writing skills; (6) oral skills necessary to make presentations and lead training sessions; and (7) ability to "fill in as a leader" in his absence. (Def. Ex. 4 [Jackson Dep.] at 14.)  He also stated that Shackelford and Smith's work habits, work quality, overall diligence, and "willingness to take on added responsibility" made them "stand out" from the other two applicants on his team, plaintiff and Simmons.  (*Id.* at 73.)  In contrast, he pointed to several problems with plaintiff's work performance -- *i.e.*, her failure to complete certain assignments or to complete them in a timely manner, and her absence from some weekly staff meetings.  (Pl. Ex. 2 [Jackson Dep.] at 25-41, 44-48.)

Based on his review of the applications and the recommendations of Jackson and Chapper, Folz submitted the names of the three recommended applicants to the selecting official, Donald Heffernan, who was Chief Information Officer for the FSS.  (Def.'s Stmt. of Facts ¶ 14.) In turn, Heffernan accepted the recommendations of Chapper, Jackson, and Folz, and selected Notarangelo, Shackelford, and Smith for the positions.  (*Id.* ¶ 15.)

Plaintiff filed a discrimination complaint with the GSA Office of Civil Rights on July 19, 2002, claiming that her non-selection for the I.T. Specialist position was due to age discrimination.  (Compl. ¶ 1 and Ex. A.)  In May 2004, the Equal Employment Opportunity Commission ("EEOC") granted summary judgment in favor of the GSA and dismissed plaintiff's claim.  (Compl. ¶ 2.)  Plaintiff subsequently appealed the EEOC decision to the Office of Federal Operations, and her appeal was dismissed.  (*Id.* ¶¶ 3, 4.)  Shortly thereafter, plaintiff filed this complaint on December 27, 2004.  Focusing exclusively on one of the three successful applicants, plaintiff argues that she was better qualified for the I.T. Specialist position than selectee Smith because of her "deeper education and proven written skills in comparison to Smith," and that Smith was selected because of his younger age.  (Pl.'s Opp'n at 20.)  According to plaintiff, her qualifications undercut the defendant's stated reason for selecting Smith over plaintiff -- that he was more qualified for the position -- and thus expose it as pretext for discrimination.  (*Id.* at 4, 22.)

## ANALYSIS

### I.    Standard of Review

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  *See also Wash. Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation omitted), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000).

In addition, Local Civil Rule 7(h) provides that "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the part of the record relied on to support the statement." In contravention of this requirement, plaintiff has failed to file a statement of genuine issues in this case. Consequently, "the court may assume that facts identified by the moving party in its statement of material facts are admitted . . . ." *Id.* As demonstrated below, however, even considering the portions of the record that plaintiff cites in the body of her opposition and drawing all reasonable inferences in her favor, she has failed to defeat summary judgment.

## II.      Age Discrimination Claim

The ADEA, under which plaintiff brings this action, prohibits an employer from taking an adverse action against an employee "because of such an individual's age," 29 U.S.C. §623(a)(1), and includes persons forty years of age or older in the class protected by the statute. *Id.* at §631(a).  To succeed on an ADEA claim, plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982).

Defendant's motion for summary judgment triggers the application of the *McDonnell Douglas* three-part "shifting burdens" test.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (applying framework to ADEA claims).  Plaintiff has the initial burden of proving a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.  If she succeeds, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its actions.  *Id.*  Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.").  If defendant is successful, then "the *McDonnell Douglas* framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted).  At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the

true reason for the employment decision. *Burdine*, 450 U.S. at 256. *See also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) ("Although the *McDonnell Douglas* framework shifts intermediate evidentiary burdens between the parties, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (internal quotation marks omitted)).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997). Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)) (internal quotation marks omitted). "Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." *Id.* (internal citations and quotation marks omitted). In other words, a district court judge does not sit as a "super-personnel department that reexamines an entity's business decisions." *Id.*

Here, the GSA "does not dispute that [p]laintiff could establish a *prima facie* case" of age discrimination under *McDonnell Douglas'* first step. (Def.'s Mot. at 4, 5.) The defendant

likewise has met its burden under the second step of the *McDonnell Douglas* framework by articulating a legitimate, nondiscriminatory reason for plaintiff's non-promotion.  Specifically, Jackson, the individual whose recommendations ultimately resulted in the selection of Smith over plaintiff, testified that (1) Smith was better qualified for the position by virtue of his I.T. training and experience, his superior work quality and work ethic, his leadership abilities, and his voluntary assumption of additional responsibility, and (2) there were several problems with plaintiff's past work performance that made her a less attractive candidate for the promotion. (*See* Def.'s Mot. at 7-13; Def. Ex. 4 [Jackson Dep.] at 73-74; 81-82; Pl. Ex. 2 [Jackson Dep.] at 33-48.)  By articulating these nondiscriminatory reasons, defendant has rebutted plaintiff's prima facie case.  *See Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006) (noting that a defendant employer's "qualifications-based justification constitutes a legitimate, nondiscriminatory reason for the allegedly discriminatory action, and as the [defendant]'s burden is merely one of production, it has satisfied the second prong of *McDonnell Douglas*").

The Court's analysis therefore turns to the third step of the *McDonnell Douglas* framework, under which the burden shifts back to the plaintiff to rebut the defendant's stated reason by presenting sufficient evidence such that a reasonable fact finder could find that the "proffered reason is but a pretext for discrimination."  *Paquin*, 119 F.3d at 27.  To that end, plaintiff essentially argues that her qualifications put her "well ahead" of Smith, and specifically, that her "deeper education and proven written skill in comparison to Smith should have provided her with a significant advantage over" him.  (Pl.'s Opp'n at 20.)  In addition, she complains that Jackson's recommendations were based solely on subjective criteria and attempts to discredit Jackson's assessment of her poor work performance.  (*Id.* at 6-11.)

At this point, it should be noted that plaintiff's subjective assessment of her own qualifications and performance cannot serve to establish pretext under the law.  "[P]laintiff's perception of h[er]self, and of h[er] work performance, is not relevant.  It is the perception of the decisionmaker which is relevant."  *Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (internal citation and quotation marks omitted), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002).  *See also Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (finding no genuine issue of material fact where plaintiff provided no evidence "other than her own self-serving and conclusory statement that she completed more work than [her coworker] -- which would permit this Court to conclude that defendant's reason for giving [her coworker] rather than plaintiff an '[o]utstanding' rating is pretextual"); *Saunders v. DiMario*, 1998 WL 525798, at *4 (D.D.C. August 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext.").  Applying these principles here, it is clear that plaintiff's argument that, in her opinion, her qualifications were "well ahead" of Smith's does not establish pretext.

Furthermore, plaintiff's claim that she was more qualified than Smith for the I.T. Specialist position is simply insufficient to support an inference of discrimination.  As the D.C. Circuit has explained, in a dispute involving relative job qualifications, "the qualifications gap must be great enough to be inherently indicative of discrimination" to support such an inference. *Holcomb*, 433 F.3d at 897.  For example, the Circuit has noted:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (*en banc*) (emphasis added).[1]  In

contrast, in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), there was no such evidence of

"*stark superiority of credentials*" between plaintiff and the successful candidate for the position

of Chief at the Department of Justice's Environmental Crimes Section.  *Id.* at 429 (emphasis

added).  Stewart had more prosecutorial experience in environmental matters, but Uhlmann -- the

successful candidate -- also had significant prosecutorial experience, with over twenty-five jury

trials to his credit.  *Id.* at 430.  Stewart had two years of service as an Assistant United States

Attorney, compared with Uhlmann's six months in that position.  *Id.*  The Circuit found that these

"fine distinctions" were not sufficient to raise a jury question.  *Id.*

> Stewart's pointing to differences in qualifications that merely indicate a 'close
> call' does not get him beyond summary judgment.  This Court will not reexamine
> governmental promotion decisions where it appears the Government was faced
> with a difficult decision between two qualified candidates, particularly when there
> is no other evidence that race played a part in the decision.

*Id.*  Likewise, in *Carter v. George Washington University*, 387 F.3d 872 (D.C. Cir. 2004), an

ADEA case, the Circuit held that "a jury could not reasonably conclude that [the plaintiff] was

significantly better qualified for" a Director of Development position at George Washington

University whose job description called for a bachelor's degree with a "master's degree . . .

preferred."  *Id.* at 881 (internal quotation marks omitted).  Comparing the qualifications of Carter

---

[1]In that case, Aka's job qualifications were far superior to those of Valenzuela, the candidate selected for a hospital pharmacy technician job.  *Aka*, 156 F.3d at 1299.  Aka had nineteen years of experience handling pharmaceutical supplies, compared with Valenzuela's two months of volunteer work at a pharmacy.  *Id.* at 1296-97.  Aka had a master's degree in business and professional administration with a concentration in health service management, while Valenzuela had no college degree.  *Id.* at 1297.  As such, Aka's credentials were sufficiently superior to those of the successful candidate to create a jury question as to whether the hospital's proffered reason for its decision was false.

to the successful applicant, the Court noted that though Carter had a master's degree and the selectee did not, the selectee had more extensive experience in fundraising, and found "no basis" for an inference of discrimination. *Id.* at 881-82. *See also Barnette*, 453 F.3d at 517-18 (holding that where a successful applicant had three fewer years of supervisory experience than the plaintiff, "rather than serving as evidence of pretext, the qualifications differential . . . merely indicate[d] a close call," and failed to defeat summary judgment) (internal citation and quotation marks omitted)). In short, it falls to plaintiff "to address the issue of *discrimination*, not to quibble about the candidates' relative qualifications." *Skelton v. ACTION*, 668 F. Supp. 25, 26 (D.D.C. 1987), *aff'd*, No. 87-5353, 1988 WL 156306, at *1 (D.C. Cir. May 12, 1988).

An examination of the record reveals no basis that would permit a reasonable fact-finder to conclude that plaintiff's credentials were "starkly superior" to Smith's, or that she was "significantly more qualified" for the I.T. Specialist position. In comparing her qualifications to Smith's, plaintiff emphasizes "written communication skill," and asserts that her writing abilities were "objectively . . . well ahead" of his. (Pl.'s Opp'n at 20.) In an attempt to establish her "objective" superiority, she devotes three pages of her brief to criticizing spelling and grammar errors contained in Smith's resume and application for the I.T. Specialist position, and proclaims that his application demonstrates "that he lacked competence is [sic] using the English language." (*Id.* at 14-17.) However, as plaintiff acknowledges, her application also contained several grammatical errors (s*ee id.* at 17, Def. Ex. 3 [plaintiff's resume and application]), and more importantly, her assessment of Smith's abilities is no more relevant to establishing pretext than her assessment of her own qualifications. Again, "[i]t is the perception of the decisionmaker which is relevant." *Waterhouse*, 124 F. Supp. 2d at 7. Moreover, even assuming *arguendo* that

-11-

plaintiff's writing skills were superior to Smith's, oral and written communication ability was just one of four KSAs listed on the Vacancy Announcement, and writing skill was only one of numerous criteria, including his observations of the applicants' performance, on which Jackson testified he based his recommendations for the position.  (Def. Ex. 4 [Jackson Dep.] at 14.)  It is, of course, well within an employer's discretion to base personnel decisions on an assessment of numerous nondiscriminatory factors in aggregate.  *See Stewart*, 352 F.3d at 429 ("Because courts are not super-personnel department[s] that reexamine[] an entity's business decision[s], we defer to the Government's decision of what nondiscriminatory qualities it will see in filling [a] position." (internal quotation marks omitted)).

Plaintiff also points to her "deeper education" to support her argument that she was more qualified than Smith.  (*See* Pl.'s Opp'n at 13.)  Plaintiff has a master's degree in Public Administration, while Smith did not have a college degree.  (*Id.*)  However, no advanced degrees were required for the I.T. Specialist job, and Smith, in contrast to plaintiff, had substantial training in the I.T. field.  (*See* Def. Ex. 5 [Vacancy Announcement]; Def. Ex. 11 [Smith Resume]; Def.'s Stmt. of Facts ¶ 22.)  Further, as Jackson explained, his recommendations were based on performance rather than "formal education."  (Def. Ex. 4 [Jackson Dep.] at 82.)  Again, it is within the defendant's prerogative to place greater value on some legitimate qualifications over others.  In fact, as plaintiff acknowledges, plaintiff's education initially caused Jackson to expect a high level of performance from her, but his expectations were not met by her subsequent work.  (Def.'s Stmt. of Facts ¶¶ 19-20; Pl.'s Opp'n at 13.)  In short, nothing in the record demonstrates that plaintiff's qualifications were "sufficiently superior to those of [Smith's] to allow a jury to infer discrimination."  *Holcomb*, 433 F.3d at 898.

With respect to Jackson's testimony regarding his dissatisfaction with her work performance, plaintiff does not offer any evidence to contradict his assertions.[2]  Instead, she argues that defendant has not produced any evidence of plaintiff's poor performance to corroborate Jackson's statements.  (Pl.'s Opp'n at 9, 20, 23.)  *McDonnell Douglas*, however, does not require the type of evidence plaintiff points to, as the defendant's burden under the second step is simply one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons."  *Burdine*, 450 U.S. at 254; *Holcomb*, 433 F.3d at 896.  Without elaborating, plaintiff also argues that Jackson's recommendations were improperly based on subjective criteria and disregarded objective criteria.  (Pl.'s Opp'n at 6, 20, 23.)  But in selecting which of his team members to recommend for promotion, Jackson was entitled to put great weight in the quality of performance he observed in each of the applicants,[3] and his explanation of his reasoning and the factual basis for his decision was both "clear and reasonably specific."  *Burdine*, 450 U.S. at 258.  *See also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (*en banc*) ("A subjective reason is a legally sufficient, legitimate,

---

[2]Plaintiff points to several annual performance evaluations that assessed her work as "at or above the expected performance level" as "undermin[ing]" Jackson's "contention of deficient performance."  (Pl.'s Opp'n at 10.)  These reviews were not written by Jackson, and thus, they are of limited relevance to rebut Jackson's testimony about his perception of plaintiff's performance problems.  (Def.'s Stmt. of Facts ¶ 28.)

[3]The *Aka* Court, while confirming that "employers may of course take subjective considerations into account in their employment decisions," cautioned that an employer's reliance on subjective considerations may sometimes mask discrimination, particularly where a jury could find that the plaintiff was otherwise significantly better qualified.  *Aka*, 156 F.3d at 1298.  As discussed above, however, there is no evidence presented in this case that would allow a reasonable jury to conclude that plaintiff was significantly more qualified, and given the utter lack of any evidence suggesting a discriminatory motive, Jackson's reliance on his personal observations of the applicants' work performance does not suggest discrimination.

nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."). The Court is without authority to "second-guess an employer's personnel decision absent a demonstrably discriminatory motive." *Fischbach*, 86 F.3d at 1183 (internal quotation marks omitted). More importantly, plaintiff's criticisms of Jackson's assessment of her work performance and qualifications do not present any material issue of fact, as they fail to call into doubt Jackson's good faith belief that Smith was better qualified for the position. *See id.* Finally, plaintiff has presented no "further evidence of discrimination . . . such as independent evidence of discriminatory statements or attitudes on the part of the employer[]." *Carter*, 387 F.3d at 878 (internal quotation marks omitted).

In sum, plaintiff has failed to offer evidence sufficient to permit a reasonable jury to find that defendant's proffered nondiscriminatory reasons for her non-promotion were pretextual, or that her non-promotion was the result of discrimination. She has therefore failed to meet her burden under *McDonnell Douglas*.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment will be granted. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 20, 2006